IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CORNELL TUBBS,            :
    Plaintiff,            :         CIVIL ACTION
  v.                        :
                             :
MERCK & CO., INC.         :         NO. 13-5992
    Defendant             :

MEMORANDUM

PRATTER, J.                                                    JUNE 17, 2014

I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Cornell Tubbs worked for Merck & Co, Inc. ("Merck"), as a chemist. Mr. Tubbs began working for Merck in 1994; however, in September 2010 he was placed on a "last chance" agreement. *Id.* Following an incident that occurred on January 14, 2011, Merck terminated Mr. Tubbs's employment.

In February 2011, Mr. Tubbs signed a Settlement Agreement and General Release (the "Agreement") in exchange for six months of paid medical benefits. The Agreement contains the release provision:

> In consideration of the promises of Merck as set forth in this Agreement and intending to be legally bound, Tubbs . . . releases and forever discharges [Merck] from and with respect to any Claim arising out or in any way relation to his employment with [Merck] or arising out of or in any way relating to any transaction, occurrence, act or omission or any loss, damage, injury occurring at any time up to and including the date and time on which he signs this agreement, including, but not limited to (a) any and all Claims based upon any law, statute, ordinance, regulation, constitution or executive order or based in contract, tort or

---

[1] The summary of background facts is based on the allegations in Mr. Tubbs's Complaint, which the Court assumes to be true for purposes of the motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

>common law on any other legal or equitable theory of relief; (b) any and all Claims based on the Employee Retirement Income Security Act; (c) any and all Claims arising under the civil rights laws of any federal, state or local jurisdiction, including, but not limited to, Title VII of the Civil Rights Act of 1964.

Settlement Agreement, Mot. to Dismiss, Ex. A. ¶ 4. In connection with executing the Agreement Mr. Tubbs was represented by a representative from his union. *Id.* at ¶ 5(e); Compl. 8. The Agreement states that Mr. Tubbs was advised of his right to consult with an attorney Settlement Agreement, Mot. to Dismiss, Ex. A. ¶ 13. Finally, Mr. Tubbs was given 21 days after signing it to consider and abandon the Agreement. *Id.* at ¶ 15.

During the settlement negotiation, Mr. Tubbs requested 34 weeks of severance pay, a request that Merck refused. He received 6 months of medical benefits. Mr. Tubbs claims that he did not receive the 34 weeks of severance pay because he is African American. In his Complaint, Mr. Tubbs contends that other, non African American individuals whose employment Merck terminated received 34 weeks' severance.[2] Thus, Mr. Tubbs brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. As discussed below, Mr. Tubbs's claim is barred expressly by the Agreement and must be dismissed.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the

---

[2]   Mr. Tubbs does not claim that his employment termination was discriminatory, only that the denial of his requested severance was discriminatory.

plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the court adheres to certain well-recognized parameters. For one, the court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not

3

demand the Court turn its back on reality.  The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)).

"Generally, a court may not take into account materials extraneous to the pleadings when considering a motion to dismiss." *Cuchara v. Gai-Tronics Corp.*, No. 03-6573, 2004 WL 1438186, *4 (E.D. Pa. Apr. 7, 2004) (citing *Angelastro v. Prudential–Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). However, the court may consider documents "integral to or explicitly relied upon in the complaint . . . without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factor Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added); *In re Donald J. Trump Casino Sec. Litig.,* 7 F.3d 357, 368 n .9 (3d Cir.1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1996)).

Mr. Tubbs's allegations, as set forth in his Complaint, are based in large measure on the Agreement. While Mr. Tubbs did not attach the Agreement to his Complaint, he referenced it throughout his allegations. The authenticity of this referenced document is not in dispute. Accordingly, it is appropriate for the Court to consider the Agreement at this stage of the

pleadings. *See Cuchara,* 2004 WL 1438186, *4 (considering a similar agreement at the motion to dismiss stage because it was integral to plaintiff's complaint.)

**III.     DISCUSSION**

In its Motion to Dismiss, Merck contends that Mr. Tubbs's Title VII claim must be dismissed because it is barred by the Agreement. In his Complaint, Mr. Tubbs argues that the Agreement does not bar his claim because it was signed under duress. As the Third Circuit has explained:

> Employees may waive employment claims against their employers so long as the waiver is made knowingly and willfully. To determine whether such a purported release is valid, we use a totality of the circumstances test. Among the factors [the courts] consider are: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received the benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law. [Courts] may also consider whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest.

*Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005) (internal quotation marks and citations omitted.) A review of these factors in the context of this case as set out in the Complaint shows that the Agreement was made "knowing and willfully," and, accordingly, is valid, enforceable, and operates to bar this claim.

First, the release language contained in the Agreement is clear and specific. The section of the Agreement titled "Release" details that "Tubbs . . . releases and forever discharges [Merck] from and with respect to any Claim arising out or in any way relation to his employment with [Merck] or arising out of or in any way relating to any transaction, occurrence, act or . . .

occurring at any time up to and including the date and time on which he signs this agreement." Settlement Agreement, Mot. to Dismiss, Ex. A. ¶ 4. The Agreement also specifically explains that Mr. Tubbs is waiving any potential Title VII claims. *Id.*

As to the second factor, there is no averment in the Complaint to suggest that Mr. Tubbs is not an educated individual. Indeed, the Complaint sets out that he was a chemist at Merck for almost 20 years. Furthermore, regarding the third factor, the Agreement explicitly states that "Mr. Tubbs has been given a period of twenty-one (21) days within which to consider this Agreement." *Id.* at ¶ 15. Nowhere does Mr. Tubbs contend in his Complaint that he was not given adequate time to make this decision.

Moreover, the Agreement specifically states that "Mr. Tubbs acknowledges that he has been advised of his right to consult with an attorney prior to signing this Agreement and has been encouraged to do so." *Id.* at ¶ 13. Mr. Tubbs was represented by the union official during the negotiation. *Id.* at ¶ 5(e); Compl. 8. As to the seventh factor, namely, whether there has been consideration, Mr. Tubbs details in his Complaint that in exchange for signing the Agreement, he received six months of paid medical benefits to which he was not otherwise entitled.

Only the sixth *Cuchara* factor is somewhat in doubt from the Complaint. It is unclear from the face of the Complaint whether "there was an opportunity for negotiation of the terms of the Agreement," although the Court infers from the nub of the claim, namely, that Mr. Tubbs's effort to secure 34 weeks' severance was rebuffed, means that there was indeed "opportunity for negotiation," albeit not ending to Mr. Tubbs's satisfaction. The Court concludes that, based on the facts of this case, the totality of the circumstances drawn from the Complaint establishes that Mr. Tubbs's release of his claims against Merck contained in the Agreement was knowing and voluntary. In *Cuchara* itself the Court of Appeals found that the plaintiff's claim was barred by

the knowing and voluntary release when he was given 21 days to sign the release, was advised in writing to seek counsel, and received a benefit from signing the release. 129 F. App'x 731.

Mr. Tubbs's claim that he was under duress when he signed the Agreement does not invalidate it as a matter of law. Mr. Tubbs asserts in his Complaint that he was under duress because he needed the medical benefits for an upcoming surgery. However, "[u]nder Pennsylvania law, absent a threat of actual bodily harm, there can be no claim of duress 'where the contracting party is free to consult with counsel.'" *Cuchara*, 129 F. App'x at 731 (quoting *Carrier v. William Penn Broad. Co.*, 426 Pa. 427, 233 A.2d 519, 521 (1967). The Court is confident that the "threat" of which the appellate court spoke would have to be from the other party to the negotiation, not a circumstance unconnected to that party. The Third Circuit Court of Appeals has concluded that economic pressure does not establish duress. *See Three Rivers Motors Co. v. Ford Motor Co.*, 522 F. 2d 885, 893 (3d Cir. 1975). Thus, because Mr. Tubbs has not alleged threatened bodily harm, and given that he had the opportunity to consult with counsel, in any event, his claim that he was under duress fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Merck's Motion to Dismiss. An appropriate Order follows.

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE